Landis, Admrx., *v.* Conestoga Transportation Company et al., Appellant. (No. 1)
Kuhn, Admr., *v.* Same.

98

Argued January 14, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Joseph W. Henderson,* with him *Harvey B. Lutz,* for appellants, Miller Motor Freight Service.

*Jacques H. Geisenberger,* for appellee, Landis, Admrx.

*J. Hay Brown, Jr.,* with him *B. M. Zimmerman,* for appellee, Kuhn, Admr.

*Paul A. Mueller,* for Conestoga Transportation Co., appellant Nos. 269-272, appellee, Nos. 251-254.

OPINION BY MR. JUSTICE HORACE STERN, March 20, 1944:

These are actions brought by the Administratrix of the Estate of Betty Jane Landis, deceased, and the Administrator of John H. Kuhn, Jr., deceased, against Conestoga Transportation Company, John L. Warner, Claude S. Warner, and O. A. Miller and Clarence Miller trading as Miller Motor Freight Service, for the recovery of damages for the deaths of Betty Jane Landis, a fifteen year old girl, and John H. Kuhn, Jr., a sixteen year old boy, alleged to have been caused by the negligence of defendants.

Briefly summarized from a record of seven hundred pages, the facts are that on the night of January 8, 1942, these two young people were waiting on the premises of a gasoline service station abutting the three-lane concrete Lincoln Highway for an eastbound bus to take them to Lancaster. A tractor-trailer owned by John L. Warner, leased to Miller Motor Freight Service, and operated by Claude S. Warner, was traveling east in the south lane of the highway. A bus of the Conestoga Transportation Company was traveling west in either the north or central lane, and, on reaching a point slightly west of the service station, it made a left-hand turn with the apparent intention of heading back to Lancaster. The result was a collision between the bus and the tractor, causing a tank of gasoline on the latter to explode; the bus then veered northward across the highway, while the tractor-trailer swerved off the south side, the trailer overturning and the tractor, then on fire, striking Betty and John and causing their fatal injuries.

The jury returned verdicts for plaintiffs against Conestoga Transportation Company and Miller Motor Freight Service; no verdict was rendered as to John L. Warner (who was not in any event liable) or as to Claude S. Warner. The omission of a verdict against Claude S. Warner is one of the reasons now urged by appellant, Miller Motor Freight Service, why a new trial

should have been granted by the court below; it argues that its liability, if any, could only be derived from his negligence, he being its employe, and in the absence of any finding against him a verdict against it cannot be sustained. When the verdicts were announced by the jury, however, not only did counsel for Miller Motor Freight Service not make any attempt to have the court instruct the jury to retire and agree upon a finding with respect to Claude S. Warner, but, on the contrary, resisted a motion to that effect made by counsel for Conestoga Transportation Company. Under such circumstances Miller Motor Freight Service has waived whatever rights it might otherwise have had to raise this issue: *East Broad Top Transit Co. v. Flood,* 326 Pa. 353, 192 A. 401.

The principal contention of Miller Motor Freight Service is that there is no evidence of negligence on the part of its driver and therefore it was entitled to binding instructions. While it is true that the tractor-trailer continued at all times in the south lane of the highway, there was testimony that it was being operated at a speed variously estimated at from thirty to forty miles per hour and that it ran approximately one hundred feet after the collision; this speed was unlawful for that type of vehicle under the provisions of Section 1002 of the Act of May 1, 1929, P. L. 905, as amended. Such a violation of the statute constituted negligence per se: *Jinks v. Currie,* 324 Pa. 532, 188 A. 356; *Ashworth v. Hannum,* 347 Pa. 393, 32 A. 2d 407; *Gaskill v. Melella,* 144 Pa. Superior Ct. 78, 18 A.2d 455. Whether it was a proximate cause of the accident was a question for the jury: *Helmick v. South Union Township,* 323 Pa. 433, 439, 440, 185 A. 609, 611, 612; *Ashby v. Philadelphia Electric Co.,* 328 Pa. 474, 479, 195 A. 887, 889. There was testimony by a witness that after the bus had started to make its turn he saw the tractor-trailer "just across the bridge"; the bridge referred to was about one hundred feet west of the point of collision. Another wit-

ness testified that he saw the bus starting to turn to its left and that instant saw the headlights of the tractor "down around the bridge somewhere". Still another testified that the tractor-trailer was on the bridge when the bus was already in the middle of the highway all lit up and with an electrically lighted arrow or indicator on its left front as a signal that it was about to make a left-hand turn. In view of this evidence it was for the jury to say whether, if the vehicle had been traveling within the statutory speed limit, the operator would have been able in the time and distance given him for action to avert the collision, and whether, in any event, he was guilty of negligence in not slackening his speed or stopping the tractor before the bus crashed into it. Of course, if the accident happened as the result of the combined negligence of the operators of both vehicles, Conestoga Transportation Company and Miller Motor Freight Service would be jointly and severally liable: *O'Malley v. Philadelphia Rapid Transit Co.*, 248 Pa. 292, 93 A. 1014; *Hughes v. Pittsburgh Transportation Co.*, 300 Pa. 55, 59, 150 A. 153, 155; *Bailey v. C. Lewis Lavine, Inc.*, 302 Pa. 273, 277, 153 A. 422, 423.

It is Miller Motor Freight Service's final contention that, even if the question of its negligence was for the jury, the weight of the evidence did not justify the verdicts. There was no assignment in the court below as a reason for a new trial that the verdicts were against the *weight* of the evidence, but only that they were against the *evidence,* which is a complaint applicable to a case only when there is no conflict in the testimony. Accordingly, the court did not formally consider this question, although we have no doubt it would have granted a new trial had it thought that the verdicts were not fairly supported by the evidence. In any event, we are of opinion, after a careful reading of the testimony, that the record would not have warranted the granting of a new trial on that ground.

Judgments affirmed.