## Pryor *v.* Chambersburg Oil and Gas Company, Appellant.

Argued January 5, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*John McD. Sharpe,* with him *E. M. Biddle, Jr.,* and *Charles H. Davison,* for appellant.

*Edwin D. Strite,* with him *LeRoy S. Maxwell,* for appellees.

OPINION BY MR. JUSTICE CHIDSEY, March 22, 1954:

The plaintiffs instituted this action in trespass against the Chambersburg Oil and Gas Company, the local distributor in Chambersburg, Pennsylvania of Tydol petroleum products, to recover damages caused by a gasoline explosion in a filling station operated by the plaintiffs, as executors and trustees under the will of Albert R. Pryor. The original defendant brought in Charles A. Pryor and Ralph Paull as additional defendants. They were respectively the manager of this local filling station and the general manager of the several places of business conducted by the plaintiffs. Pryor and Paull then brought upon the record as second additional defendant Ralph Kell, Sr., the original defendant's general manager, claiming that he and the Chambersburg Oil and Gas Company were alone liable to the plaintiffs.

A verdict was rendered for the plaintiffs against the Chambersburg Company and in favor of the additional defendants and the second additional defendant. Motions for a new trial and judgment non obstante veredicto filed by Chambersburg were overruled by the court below and the present appeal is taken from the judgment entered for plaintiffs.

Considering first the motion for judgment n.o.v., the evidence taken in the light most favorable to the plaintiffs is as follows: Under a verbal agreement with Albert R. Pryor, and after his death with the plaintiffs, the defendant corporation installed and maintained on plaintiffs' property its own gasoline tanks and pumps. In consideration thereof, Albert Pryor and thereafter the plaintiffs agreed to sell the defendant's gasoline and oil exclusively. In the early evening of June 25, 1948, Charles Pryor, the plaintiffs' local manager, notified the defendant, through its manager, Kell, of the presence of gas fumes in the cellar of the service station. That same evening Kell arrived at the scene and also detected the aroma of gas and observed a dark oily fluid floating on some water in the basement. He returned again the following day and inspected two other cellars in the nearby vicinity, one of them a service station, but found the same condition did not exist in these buildings. He inquired of Pryor if he was losing any gas from the underground storage tanks, to which Pryor replied, ". . . apparently they were all right as far as he knew.". Kell proceeded to examine the gasoline pumps on plaintiffs' property and found a leak in an ell of a pipe leading from a 550 gallon ethyl tank which caused a couple of gallons loss each time the pump was used in dispensing gas. Two pumps were located on the plaintiffs' premises, one of which dispensed straight gasoline and was connected to an underground tank with 1,000 gallon capacity situated about 15 feet from the wall of the cellar. The other contained ethyl or high test gasoline and this was connected to two smaller tanks with a capacity of 550 gallons each, about 25 feet from the cellar. The ell was immediately repaired but no inspection was made of the straight tank at that time.

It being evident after a couple of days that the previous condition had in no way abated and was growing steadily worse, the parties decided on June 29th to test all tanks by taking meter readings at both pumps. This test revealed an apparent loss of a small quantity of straight gas which the parties felt might have been caused by a misreading of the figures on the totalizer. On July 1st the president of the defendant company, Mr. Jannone, directed Kell to conduct a second test on the straight tank by a more simplified method, whereupon it was found that during the evening the tank had lost 125 gallons of gasoline. Mr. Pryor informed Kell he wanted the situation remedied at once, as a result of which Kell emptied all gasoline from the straight tank on July 3rd, but he informed Pryor that because of the ensuing holiday, the shortage of manpower would prevent the actual removal of the tank until July 6th.

When the tank was eventually removed on the morning of the 6th, it was determined that there were several small holes in the tank, apparently brought about by rusting. Certain gas and water which had accumulated around the tank prior to its removal flowed from the surrounding soil into the excavation. This necessitated washing and ventilating the excavation before the new tank was installed on July 7th. Following the installation of the new tank, the attendant in charge of the station during Mr. Pryor's holiday vacation asked Kell what he should do to clear the fumes that still persisted in the basement. In compliance with Kell's advice, the attendant washed down the cellar walls and sprayed them with a fire extinguisher fluid which tended to obviate the condition to some extent. On July 12, 1948 there was an explosion of gasoline in the cellar which resulted in the fire that prompted the present litigation. It is not dis-

puted that the explosion was caused by the ignition of gasoline vapors which had accumulated in the cellar due to leakage from the 1,000 gallon straight gasoline underground tank.

The statement of claim contained a number of charges of negligence: That defendant maintained a tank in a dangerous condition for a long period of time, continued such maintenance after receiving actual notice of the condition, failed to take proper precautions to neutralize the effect of the gasoline that had collected prior to the installation of the new tank and in failing to employ sufficiently skilled and trained personnel. In support of its motion for judgment n.o.v., the appellant contends there was not sufficient evidence of negligence on its part to be submitted to the jury and even assuming there was negligence, the plaintiffs were guilty of contributory negligence as a matter of law and voluntarily assumed the risk of injury to their property. It further contends that the verdict of the jury that Kell, defendant's employe, was not negligent requires a similar finding of no negligence on the part of the Chambersburg Oil and Gas Company because of the doctrine of respondeat superior.

Gasoline is a highly volatile and dangerous substance and a higher degree of care is imposed on persons dealing with such a dangerous agency than would ordinarily attach to one conducting a business involving little or no risk. No absolute standard can be fixed by law, but every reasonable precaution commensurate with experience and the known danger ought to be taken: *Fredericks v. Atlantic Refining Co.,* 282 Pa. 8, 13, 127 A. 615. The testimony reveals that almost a week had transpired after the defendant was notified before the source of the hazardous condition was unveiled. The plaintiffs had called upon the de-

fendant who owned the equipment and was familiar with its operation to utilize its superior knowledge in alleviating the danger. It should have been obvious to the defendant that the small amount of gasoline that escaped from the ethyl tank could not produce the condition in the cellar. A proper appreciation of the danger involved demanded the utmost celerity in making a complete inspection of all the equipment to uncover the leak and the immediate removal of that which proved defective. What was said by this Court in *Griffith et al. v. Atlantic Refining Co.,* 305 Pa. 386, 391, 157 A. 791, where the appellant defendant installed the appliances and retained ownership of them, is apposite here: ". . . Moreover, appellant continued to use them [storage tanks] by putting gasoline into them and it seems to us that when it filled the tanks with this dangerous substance, it was bound to make sure that they were safe receptacles for it. . . .".

In addition the delay of three days in removing the tank tended to increase the risk, for the gas and water that surrounded the tank continued to seep into the cellar, whereas a prompt removal would have diverted the flow. Certainly under these facts there was sufficient evidence presented by the plaintiffs for the jury to conclude that the defendant had not discharged the duty which the law imposed on it.

It is equally clear that the court could not declare as a matter of law that the plaintiffs were guilty of contributory negligence. Unquestionably no duty rested with the plaintiffs to seek out and repair the defect, for by the oral agreement the defendant obligated itself to maintain the tanks in a safe condition. As the learned judge below correctly held, the fact that the plaintiffs maintained a sump pump in their cellar could not be contributory negligence unless the defendant introduced evidence that the pump was op-

erating or that there were conditions present which would cause it to run at or about the time of the explosion. Likewise there was no proof that the actual operation of the business contributed to the explosion. Although it was within the realm of possibility that either of these factors could have caused ignition of the vapors, the meager evidence presented afforded only speculation or conjecture. At best, the issue of contributory negligence was clearly for the jury.

The plaintiffs' actions negate the inference that they consented to assume the risk. Precautions were taken to apprise others of the dangerous condition and they sought the defendant's advice on how to neutralize the vapors. Assurances were received from the defendant's employes that everything was all right and having thus lulled the plaintiffs into a sense of false security, defendant cannot now contend that by operating the business plaintiffs voluntarily assumed the risk.

The third contention of the appellant that the verdict was inconsistent in that its liability was purely derivative and since the jury found in favor of Kell a verdict against it cannot be sustained, is without merit. It is a general rule of substantive law, so frequently applied that it is unnecessary to cite cases in support, that corporations like individuals are responsible for tortious injuries to others. The amended complaint against the defendant corporation charges it directly with certain acts of negligence. It is undoubtedly true that where the master is joined with the servant in an action based wholly upon the servant's negligence or misconduct, the master cannot be held unless there is a cause of action against the servant. However, in the instant case the plaintiffs proceeded on the theory that the corporation was independently

liable. There was no attempt to restrict the alleged negligent acts to Kell alone. Therefore, recovery could be had against the corporation, irrespective of Kell's liability. See Fletcher Cyclopedia Corporations, Vol. 10, Ch. 54, §4898; Restatement, Agency, §213, comment h. Testimony was introduced which tended to show direct action or participation by the company through Mr. Jannone, its president and principal shareholder. Mr. Jannone freely admitted that he had authority to give Kell instructions and directions as to when and how tests would be made to determine leakage and that he personally directed Kell to make such a test in this case and was present while the test was conducted. The jury could have thereby concluded that the employe Kell was acting under the direction of the person in charge of the corporation and thus exonerate the servant but hold the company negligent because of an act or omission by its president.

Finally, in support of its motion for a new trial, the appellant complains of certain alleged errors in the court's charge and the inadequacy of the charge as a whole. No specific exceptions were taken to the portions upon which the assignments of error are now based and consequently we need only decide if the charge was so basically and fundamentally defective that it misled the jury to defendant's prejudice: *Harman et ux. v. Chambers,* 358 Pa. 516, 519, 57 A. 2d 842.

After a complete exposition of the applicable law and an accurate resume of the evidence, the trial judge stated to the jury: "Members of the jury, your verdicts can be for the Plaintiff and against the Chambersburg Oil and Gas Company, against Pryor and Paull and Kell for whatever amount or sum you state, or it can be for the Plaintiff against any one, any two, or any three of them, and in a case where you have it against

any one, against two or three of them, then you must find for the other Defendants. . . .". Since the negligence of the plaintiffs' managers Pryor and Paull would be imputed to the plaintiffs under the doctrine of respondeat superior, a verdict against these two defendants would have barred recovery by the plaintiffs against the defendant corporation. In his opinion the learned trial judge recognized that he had erred in this regard but he felt that contributory negligence, direct or imputed, had been fully explained elsewhere in his charge. A careful analysis of the entire charge reveals that the question of contributory negligence was fairly and adequately presented to the jury. Moreover, even if the particular portion complained of might have confused the jurors, the appellant was in no way prejudiced by the error, for had the jury rendered a verdict against Pryor and Paull, the verdict against appellant would not have been permitted to stand. The verdict that resulted proved the error to have been harmless, for finding no negligence attributable to Pryor and Paull, the plaintiffs were necessarily free of any contributory negligence.

We find no merit in appellant's second assignment of error that the charge of the court was inadequate. The charge covers 40 printed pages of the record. If counsel felt further instructions were necessary regarding the law or the facts, it was counsel's duty to request the trial judge to amplify the charge so as to cure the inadequacy. Where such a request is refused, counsel may resort to a specific exception: *Voitasefski v. Pittsburgh Railways Company et al.*, 363 Pa. 220, 226, 69 A. 2d 370. At the end of the charge and again after additional instructions were given, the court asked counsel if they desired any additional statement, and counsel for both parties answered in the negative. The rule that an appellate court will not grant a new

trial on the ground of inadequacy unless there is omission of something basic or fundamental, is especially applicable where the complaining party was invited to suggest additions to or modifications of the charge and remained silent: *Takac v. Bamford,* 370 Pa. 389, 88 A. 2d 86.

What has just been said applies with equal force to appellant's other complaints concerning the charge. It seems strange that a charge claimed by counsel to be so replete with errors, was not made the subject of specific exceptions. In this lengthy trial with complicated issues, it was especially incumbent upon counsel to make known to the court what was claimed to be erroneous or insufficiently covered. Under a general exception to the charge we will consider only basic or fundamental errors: *Susser v. Wiley et al.,* 350 Pa. 427, 39 A. 2d 616. We have considered the charge in its entirety and in our opinion it is free of any basic or fundamental error requiring a new trial.

Judgment affirmed.