Matkevich *v.* Robertson, Appellant.

Argued January 9, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*E. P. Balderston, Jr.,* with him *J. Allen Hodge,* for appellant.

*John J. Harding,* for appellee.

OPINION BY MR. JUSTICE EAGEN, March 23, 1961:

This issue arises out of a collision involving an automobile owned and operated by the plaintiff, Joseph V. Matkevich, and an automobile operated by the defendant, Mattie Robertson, but owned by her father, the defendant, William Robertson. The plaintiff sued, both the driver and the owner of the Robertson automobile, to recover for personal injuries suffered and property damage to his automobile. The jury awarded the plaintiff a verdict against the owner-defendant, William Robertson, alone. The latter moved for judg-

ment n.o.v. or a new trial. The lower court denied both motions. From the judgment entered upon the verdict, the defendant, William Robertson, appeals.

The motion for judgment n.o.v. is devoid of merit. The question of negligence on the part of the driver of the Robertson automobile was distinctly a jury question and it was stipulated that she was the servant of William Robertson at the time of the accident.

The collision occurred on a two-way improved public street, approximately twenty-one feet wide, which was straight and level. The weather was dry and cold. The roadway was dry, but icy in spots. The automobiles involved were traveling in opposite directions. According to plaintiff's testimony, the defendant's automobile crossed the center line, came over onto the wrong side of the road, traveled in a straight course for approximately eighty-five feet, and hit the plaintiff's automobile head on. What caused it to cross over the center line, the plaintiff did not know. At the moment of impact, the plaintiff had pulled over on his own right side of the road as far as possible and was practically stopped. The testimony of Mattie Robertson was to the effect that the car she was driving skidded on a patch of ice which caused her to lose control of the vehicle, resulting in the car unintentionally veering over on the wrong side of the road.

In considering the merits of a motion for judgment n.o.v., the entire testimony must be evaluated in the light most favorable to the verdict winner: *Taylor v. Mountz*, 387 Pa. 321, 127 A. 2d 730 (1956). This Court has held, again and again, that when an automobile is operated on the wrong side of the highway, that fact in itself is prima facie evidence of negligence and is sufficient to carry the case to the jury on that question. If it is the proximate cause of an invasion of another's interest, it will justify a jury finding the actor liable for the resultant injury: *Nixon v. Chia-*

*rilli*, 385 Pa. 218, 122 A. 2d 710 (1956); *Buchanan v. Belusko*, 361 Pa. 465, 65 A. 2d 386 (1949); *Fisher v. Hill*, 362 Pa. 286, 66 A. 2d 275 (1949); *Miles v. Myers*, 353 Pa. 316, 45 A. 2d 50 (1946). This is not the case of *Richardson v. Patterson*, 368 Pa. 495, 84 A. 2d 342 (1951), wherein the plaintiff's *own* evidence showed that the other car skidded and then came over on the wrong side of the road as a result of the skidding. As that case pointed out, skidding in itself does not constitute negligence, and if the plaintiff's testimony shows the defendant's car skidded over on the wrong side of the road, then it is incumbent upon him to go further and show that the skidding was a result of negligent operation of the car. However, where, as here, the plaintiff is content to prove a collision as a result of the defendant's car being over on the wrong side of the road, the burden is upon the defendant to offer exculpatory proof. The truthfulness of defendant's explanation of why and how the Robertson car was over on the wrong side of the road was for the jury; this, together with the other testimony, was for its consideration in determining the issue of negligence. In itself, it was not automatically self exculpatory.

Unfortunately, the case must be retried. The verdict was against the owner of the automobile alone. No verdict was returned against the driver, who was the actual tortfeasor; the verdict was in effect, in her favor. Since the relationship of respondeat superior was admitted, the owner was properly found liable, *if his servant were negligent. However, his liability was of necessity based solely upon this relationship and the negligence of his servant.* He was not charged with an independent act of negligence, nor was such proven. Unless a cause of action existed against the servant, the master, under such circumstances, cannot be held: *Pryor v. Chambersburg Oil & Gas Co.*, 376

Pa. 521, 103 A. 2d 425 (1954); 35 Am. Jur., Master and Servant, §476 (1941). A verdict against the employer and in favor of the employe, or vice versa, under the circumstances, is inconsistent: *Ferne v. Chadderton*, 363 Pa. 191, 69 A. 2d 104 (1949). The jury's unwarranted action was invited by the instructions of the trial judge, who incorrectly told them, on more than one occasion, that the plaintiff could recover against the owner of the car alone and that the jury could in its discretion exculpate the driver of the automobile. This was basic, fundamental, and prejudicial error. The general exception to the charge was sufficient to preserve the right to appellate review of this erroneous instruction: *Nunamaker v. New Alexandria Bus Co.*, 371 Pa. 28, 88 A. 2d 697 (1952).

The authorities cited by the lower court in support of the correctness of the charge and the validity of the verdict are inapposite. In *East Broad Top Transit Co. v. Flood*, 326 Pa. 353, 192 A. 2d 401 (1937), there was evidence of an independent act of negligence on the part of the employer. The verdict was not necessarily predicated on any act of the servant. In *Landis v. Conestoga T. Co.*, 349 Pa. 97, 36 A. 2d 465 (1944), the jury failed to render a verdict against the servant, or operator, of a tractor-trailer involved in an accident and did render a verdict against the employer. However, the jury's action in that case was not due to erroneous instructions on the part of the court and, what is more important, when counsel for one of the parties involved immediately made a motion to have the jury retire again and make a specific finding as to the servant, counsel for the employer resisted and objected. This Court properly held that, under these facts, the employer-defendant waived the right to subsequently raise the issue.

We are reluctant to order a retrial, particularly in view of the family relationship existing herein between

the defendants. However, to condone such error would do havoc to the principles of law concerning the rights of indemnity and might well influence the compounding of the error in the trial of future cases.

Judgment reversed and a venire facias de novo.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The ordering of a new trial in this case represents superfluity at its zenith, utility at its nadir, and expenditure of time and money at its climactic futility. The new trial merely gives to the defendant William Robertson (that is, his insurance carrier) another chance to win a case he has fairly and squarely lost in a trial which denied him nothing in the way of the fullest opportunity to prove his contention. If the evidence presented at the first trial is repeated in the second trial, and there is no claim that it will undergo the slightest modification, William Robertson (that is, his insurance carrier) will lose again. It is almost impossible to see how, in justice, common sense, and fundamental law, William Robertson can win. His car, driven by his daughter on his business, crossed over the center line of the highway and crashed head-on into the automobile of the plaintiff which was practically stopped on its own side of the road.

Why then the new trial? The Majority says that the trial judge made a mistake. If the trial judge did orally fail to cross a "t" or dot an "i", the oversight hurt nobody. A new trial is ordered when someone's rights have been invaded and when something substantive has been lost. The law does not deal in phantoms nor in technical ghosts. It does not condemn litigants to race on a treadmill which brings them no closer to their destination than where they are at the current moment.

Mattie Robertson, the young girl driver of the William Robertson car, is the daughter of William Robertson and was operating the car for him. She had as passengers in the car her brother, two sisters and a neighbor boy, taking them to the township high school. There was not the slightest or remotest suggestion that she was economically involved in the ride, or that she was pursuing any personal bent. Particularly, solely, and exclusively, she was performing a family chore under the direction of her father. It is simply absurd to assume that in any way she was anything other than an agent for her father, accomplishing a deed for her father, for which the father was legally and morally liable.

The father, William Robertson, testified: "Q. You are the owner of this 1956 Lincoln involved in this accident? A. Yes. Q. Was your daughter, Mattie operating it the morning of February 24, 1958? A. Yes. Q. That is with your permission? A. That's right. Q. And as she testified, that was for the purpose of taking your children and Tommy Young, a neighbor, to the Ridley Township School. A. That's right." After the accident it was William Robertson who had the car towed to a repair shop for repairs.

Under the doctrine of respondeat superior, William Robertson could not possibly escape liability for the negligence of his daughter who was operating his car for his benefit.

The jury returned a verdict for $10,000 in favor of the plaintiff Matkevich against William Robertson. The jury made no mention of Mattie Robertson in their verdict. Because of this failure to mention Mattie Robertson, this Court has ordered a wholly useless, unnecessary and meaningless new trial. If, on the new trial the jury includes Mattie Robertson as one of the persons financially responsible for the damages suffered by the plaintiff, this will still be mean-

ingless because it is the insurance company which will pay the verdict, whether it is against the father or against the daughter, or both. The appellee in his brief states: "the insurance policy covering the defendant's automobile covers both principal and agent in this case."

The appellant does not refute this assertion. Does this not establish the sheer absurdity of another trial?

Of course, the situation would be different if there were anything in the case suggesting lack of negligence on the part of the defendant, but this Court has ruled out any such possibility with the statement: "The motion for judgment n.o.v. is devoid of merit. The question of negligence on the part of the driver of the Robertson automobile was distinctly a jury question."

This state of affairs will not alter in a new trial. Why then the new trial? The trial court said to the jury: "And so, if you bring in a verdict in favor of the plaintiff, you could do two things: you could bring in a verdict against both defendants as joint tort-feasors; it wouldn't be very proper to bring in a verdict against the girl alone because it has been established by the evidence that she was an agent, but you could bring in a verdict against the father alone, if you saw fit, in which you would say that although the girl may have been guilty of negligence, her negligence having been imputed to her father, that he was the residual person upon whom to place the blame and to exact any damages that might be necessary to find in the case."

The appellant in his brief conceded: "The agency was admitted as was also the fact that at the time and place of the accident the defendant-agent was then and there engaged upon the family business of the defendant-principal." With such agency admitted, the trial judge very correctly said to the jury: "It

wouldn't be very proper to bring in a verdict against. the girl alone because it has been established by the evidence that she was an agent."

The girl was executing the will of the father. She was merely the arm of her father, William Robertson, and a verdict against her alone would be unsustainable because without the father there would be no case at all. I repeat that Mattie Robertson was not on any venture of her own. The liability of William Robertson was as much his as if he were at the wheel of his car. And I must reiterate that the appellant admits this. Why then, I ask again, the new trial? There is no possibility at all that William Robertson can be released from liability, once it is established that there was negligence in the case. And that negligence has been established.

In the case of *East Broad Top Transit Co. v. Flood,* 326 Pa. 353, the jury brought in a verdict against the corporation defendant without mentioning the driver-agent who was physically responsible for the accident there involved. The corporation appealed. This Court said: "The trouble with the position in which appellant finds itself is that, neither at nor after the trial, did it avail itself of its right to insist upon a verdict fixing the status of the individual defendant; it has therefore only itself to blame for the situation of which it now complains. . . . Before the verdict in the present case was recorded appellant should have objected to its being received. Since appellant remained silent, and without complaint allowed the jury to be discharged, it would manifestly be unfair to plaintiff to grant a new trial after a recovery of a verdict against appellant on the merits of the case."

Why didn't the appellant here, when the jury failed to mention Mattie Robertson in its verdict slip, ask the court to instruct the jury to fix the status of Mattie Roberston?

In the case of *Landis v. Conestoga Transportation Co.*, 349 Pa. 97, the jury also failed to mention in its verdict the name of the driver-employee of the defendant company, and the company appealed. This Court again said that it was too late to complain after the verdict had been recorded.

This Court has said more times than can possibly be counted that counsel may not remain silent when an appropriate motion would correct an obvious error and then later base an appeal on the error. I have always opposed the proposition that a client should suffer because of the mistake of his attorney, but if this Court is to be consistent, it should refuse the present appeal if for no other reason than that the appellant failed to make timely objection. But I would refuse the appeal for another and more substantial reason, as already indicated.

The appellant did not suffer any loss as a result of the jury's failure to name Mattie Robertson in its verdict because the appellant (the insurance company) would have to pay and will have to pay any verdict rendered against the defendant in this case no matter who is named in the verdict slip.

Thus we come back to the irrefutable proposition that the appellant (insurance company) is demanding a new trial so that it may have another chance to convince another jury either that the plaintiff was guilty of contributory negligence or that the defendant was not negligent at all. The appellant wants to re-try the case on its merits, when this Court says that this may not be done.

Could anything be more inconsistent? The merits of the controversy are already adjudicated and this Court says they may not be re-adjudicated. Yet it sends the case back for a new trial to bring about the very thing it deprecates, namely, a retrial on the merits!

The argument of the appellant that the omission of Mattie Robertson's name from the verdict slip vitiates the trial is sheer subterfuge because, if there is a verdict against the defendant in any way at all, the insurance company must pay the verdict. Hence, the desire of the insurance company for a new trial is the hope that this time the jury may return a verdict against the plaintiff completely. In other words, a retrial on the merits. Should this Court permit this kind of a basketball game?

Even if we were to admit that the lower court erred in its charge to the jury, no harm resulted, and this Court has said more times than there are gasoline stations in Delaware County that where an error is harmless no new trial will be granted. Is this Court now repudiating that salutary rule? If a surgeon overlooks to wear his mask or don his rubber gloves, but the operation is successful and the patient is cured, must the patient nevertheless undergo a second operation so that the surgeon may be properly clothed?

The Majority says that it is reluctant to order a new trial. This Court should never act with reluctance. To the extent that it is reluctant, there is a suggestion that it may not be right. And why should it not be right when there are no fogs or mists to dim perspective on the highway of justice?

The reason the Majority gives for ordering what it is reluctant to accept is that, it says: "to condone such error would do havoc to the principles of law concerning the rights of indemnity and might well influence the compounding of the error in the trial of future cases."

But this is a non sequitur. We do not have to condone the lower court's error, if there was error. We can spread the error on the record so that the whole world may see it and no future judge may follow that irregular path on the basis that the error has

been condoned. We do not condone the error, we only say that the patient was not injured as a result of the surgeon's wearing silk gloves instead of rubber gloves, and therefore there is no need for a second operation. This does not mean we repudiate surgical rubber gloves.

The Majority Opinion says also: "We are reluctant to order a retrial, particularly in view of the family relationship existing herein between the defendants." This suggests that the rights of the father and daughter are adverse to each other. The converse is true. The father and daughter are on the same side, and they are both in the hands of the insurance company. It is, of course, proper and demanding that in a jury trial no mention must be made of insurance, but in an appellate court we should not wear the blindfold of fiction. The appellant in this case is the insurance carrier. It, of course, has the right to appeal and it is entitled to every benefit due its insured, but where its argument is so obviously dissembling as it is here, this Court should not permit illusion to take the place of facts, and technicality to defeat justice.

The plaintiff here has won a case fairly and squarely, as the appellant has lost it fairly and squarely. To order a new trial on the basis of an equivocation as transparent as it is unfair, is to do the very thing the Majority decries, namely, bring "havoc to the principles of law."

The object of every lawsuit should be to achieve a result which will meet the demands of conscience in the eyes of the law. That result has been achieved here. To undo what has properly been done is to bring havoc to the cause of justice itself.