Rodgers *v.* Sun Oil Company, Appellant.

Argued November 17, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

reargument refused February 15, 1962.

*Richard W. Hopkins,* with him *White & Williams,* for appellant.

*James M. Moran,* with him *Beasley & Ornsteen,* for appellee.

OPINION BY MR. JUSTICE EAGEN, January 17, 1962:

Plaintiff suffered injuries in an unusual accident, while a business visitor at a gasoline station of the defendant corporation. This action for damages resulted. At trial, the jury awarded plaintiff $10,000. The court en banc denied motions for judgment notwithstanding the verdict or a new trial. From the judgment upon the verdict, defendant appeals.

Was the defendant entitled to judgment n.o.v.? The sole question for determination in resolving this issue is: Whether or not the evidence presented is sufficient to sustain a finding of negligence on the part of the defendant or its employee? In so doing, the testimony must be read in the most favorable light to plaintiff's cause, giving him the benefit of every fact and inference of fact reasonably deducible from the evidence: *Greco v. 7-Up Bottling Co. of Pittsburgh,* 401 Pa. 434, 165 A. 2d 5 (1960); *Matkevich v. Robertson,* 403 Pa. 200, 169 A. 2d 91 (1961).

The record discloses the following: On March 26, 1958, plaintiff drove his automobile, a 1948 Oldsmobile, into defendant's gas station for the purpose of refueling, tightening the emergency hand brake and differential lubrication. The plaintiff also requested the attendant to run through the engine "Bardhal," a chemical compound with a light oil base, used to free sticky valves and to burn out carbon in the engine. Since "Bardhal" was not in stock, the attendant sug-

gested to plaintiff that a comparable compound manufactured by the defendant corporation, known as "Suntune," be used. To this, plaintiff agreed.

In order to run such a product through the engine, it is necessary to remove the breather cap from the top of the carburetor, pour the additive directly into the carburetor and thence into the engine. At the same time, it is also necessary to accelerate the motor to a high speed to induce proper circulation of the additive.

The attendant began the task of pouring the "Suntune" into the engine of the automobile. A huge volume of smoke emitted from the exhaust. The attendant instructed the plaintiff to move the automobile to a certain spot on the leeward side of the gas station (this was an inclined area) to leave the motor running, to put the emergency brake on, and to put the gearshift into neutral. When this was done, the attendant then resumed the job of pouring the additive into the engine. While so doing, he accelerated, or raced the motor to a great speed by hand manipulation. As this was in progress, plaintiff stood alongside of the automobile watching the operation. Suddenly, the automobile jumped into gear, lurched forward, struck plaintiff and threw the attendant over on top of him. The automobile went forward approximately three feet, struck a fence, rebounded and ran over plaintiff's ankle.

The plaintiff introduced, as an expert, the testimony of one George W. Willis, an automobile mechanic with twenty-five years' experience, who had also for several years attended schools sponsored by General Motors Corporation, manufacturer of Oldsmobile automobiles. He testified, inter alia, that in the 1948 Oldsmobile, the transmission shift lever went from neutral to forward drive, and from neutral to reverse; that while attending the General Motors school in the year 1946, he had been instructed that the transmis-

sions in Oldsmobiles manufactured during these years were defective; that they had a known propensity to bolt or buck forward when the engine was manually accelerated, due to the torque of the engine moving the linkage causing the gears to become automatically operative; that his experience as a mechanic over the years confirmed the existence of this defect; and, that such was not corrected until after the year 1949, when the manufacturers built in a detent which prevented the automatic shifting of the gears. He further testified that he had been instructed by General Motors that in order to overcome the defect above described, a certain inexpensive portable tool should be utilized which, if attached to the heating vent for the windshield defroster and the gearshift lever, would prevent the automatic shifting of gears, while the motor was being manually accelerated.

In the instant case, the defendant's attendant used no such tool, did not place any blocks under the wheels of the automobile, nor pursue any other precautionary measures to prevent automatic movement of the automobile during the process of the manual acceleration of the motor.

This proof was insufficient to warrant the submission of the question of defendant's negligence to the jury, and the lower court erred. in not entering judgment for the defendant notwithstanding the verdict.

The defendant's liability necessarily had to be predicated upon the conclusion that it knew, or should have known, of the existence of the mechanical defect in these particular automobiles or that a reasonable inspection would have revealed it. See, Restatement, Torts, §300. The evidence is devoid of any proof of actual knowledge. Information of the defect's existence was not generally disseminated. Clearly a reasonable inspection would not have aided in disclosing its presence. Nor does the evidence warrant a finding

that the defendant should have known that such a defect existed.

To accept the theory of negligence proposed in this case, the failure to discover and become aware of a flaw in a certain type of automobile, over eight years old, would impose upon gas station operators the duty to inspect and possess expert knowledge of all mechanical imperfections and engineering anomalies in all types of motor vehicles serviced. The unreasonableness of such a requirement is readily apparent. Over five million automobiles are manufactured in the United States each year, including a hundred varied makes and models. To hold that a gas station operator should know that a certain model and type possessed a hidden defect which would cause it to automatically leap forward under certain unusual circumstances is beyond all logic and reason. If such were the law, only expert mechanics could be employed as gas station attendants. No such unjust requirement is expected or imposed.

The judgment of the lower court is reversed and herewith entered for the defendant.

Mr. Justice MUSMANNO dissents.