## Torres v. Episcopal Hospital

*Stuart D. Fiel,* for plaintiffs.

*Andrew Siegeltuch,* for defendants Advanced Door Service Inc., Murphy and Van Dine.

*Anna M. Bryan,* for defendants Episcopal Hospital and Kozub.

*Gerald J. Valenti,* for BEA Inc.

ACKERMAN, *J.,* January 27, 2000—Following a 14-day jury trial, inter alia, the jury found for the plaintiff, Ana Torres, and against the defendants, George Kozub, Episcopal Hospital, James Murphy, Albert Van Dine and Advanced Door Service Inc., in the sum of $1.5 million. The jury also found for the husband-plaintiff, Pedro Torres, and against the defendants, George Kozub, Episcopal Hospital, James Murphy, Albert Van Dine and Advanced Door Service Inc., in the sum of $250,000. The jury apportioned liability as to George Kozub, defendant, 20 percent; Episcopal Hospital, defendant, 50 percent; James Murphy, defendant, 10 percent; Albert Van Dine, defendant, 5 percent; and Advanced Door Service Inc., defendant, 15 percent.

This court molded these percentages of responsibility to hold defendant, Episcopal Hospital, vicariously liable for 70 percent of the verdict (including the vicarious liability of Episcopal Hospital for unnamed employees, totalling 50 percent) and 20 percent for employee, defendant, George Kozub.

Defendants, Episcopal Hospital and George Kozub, filed a motion for post-trial relief, claiming, inter alia:

(A) A judgment n.o.v. is appropriate because:

(1) Moving defendants are entitled to full indemnity from defendant, Advanced Door Service Inc.

(2) Defendant, Episcopal Hospital, should not have been included on the verdict form as there was no evidence of direct negligence nor evidence of negligent acts allegedly committed by unnamed employees.

(3) The jury's loss of consortium award is not supported by the evidence.

(B) A new trial is appropriate because:

(1) The jury's apportionment of damages against defendant, Episcopal Hospital, is irreconcilably inconsistent with the apportionment of damages against defendant, George Kozub.

(2) Instructional errors require a new trial because:

(a) A res ipsa loquitur charge should not have been given to the jury.

(b) The charge as to life expectancy should not have been given to the jury.

(c) The jury should have been charged that under the law, defendant, Episcopal, can satisfy its duty of reasonable care by contracting with defendant, Advanced Door Service Inc.

(d) Plaintiffs' counsel made prejudicial remarks during closing argument.

(e) Plaintiffs' expert, William Simon M.D., was improperly permitted to testify beyond the fair scope of his pretrial reports.

After review of defendants', Episcopal Hospital's and George Kozub's, motion for post-trial relief and plaintiffs' and defendant's, Advanced Door Service Inc.'s, responses thereto, and after argument and hearing, this court, inter alia, ordered in its order of November 15, 1999, and clarification order of November 19, 1999, that: (1) defendants', Episcopal Hospital's and George Kozub's, motion for post-trial relief was denied, and entered judgment on the jury verdict; and (2) both cross-claims of defendants, Episcopal Hospital and Advanced Door Service Inc., against each other were denied.

Defendants, Episcopal Hospital and George Kozub, filed the instant appeal.

## I. *Moving Defendants Are Entitled to Full Indemnity From Defendant, Advanced Door Service Inc.*

This court properly found from the evidence in the record that defendant's, Episcopal Hospital's, acquisition and continuation of the dangerous condition (*i.e.,* doors) precluded the right of indemnity by the hospital under the common-law theory of indemnification. (See June 22, 1999, pp. 29-30.)

As the Superior Court has noted, a party is entitled to indemnity only when, *without active fault on its part,* it has been compelled by reason of some legal obligation to pay damages occasioned by the negligence of another. Only under those circumstances may the party compelled to pay recover from the party primarily liable. *Levy v. First Pennsylvania Bank N.A.,* 338 Pa. Super. 73, 487 A.2d 857 (1985).

As the Pennsylvania Supreme Court has held, in the case of concurrent joint tort-feasors, having no legal relation to one another, each of them owing the same duty to the plaintiff and involved in an accident in which an injury occurs, no right of indemnity exists, and there is only common liability, even though one party may have been much more negligent than the other. *Builders Supply Co. v. McCabe,* 366 Pa. 322, 77 A.2d 368 (1951).

No error in this respect occurred.

## II. *Defendant, Episcopal Hospital, Should Not Have Been Included on the Verdict Form As There Was No Evidence of Direct Negligence Nor Evidence of Negligent Acts Allegedly Committed by Unnamed Employees*

The uncontroverted evidence in this case reveals that numerous employees were "involved" with these doors

in general, and with regard to the contractual obligation to inspect and conduct a "walk-through" in particular. Its supervisory employees, George Kozub, Walter Marek and Paul Sarnese, identified the various departments of employees who would or should have been involved with the safety of these doors, and the defendant's own memorandum identifies other non-named individuals including "Mr. Carlin and Mr. Hagen."

Accordingly, there was evidence of negligent acts committed by unnamed employees of defendant, Episcopal Hospital, which formed the proper basis for a jury verdict against defendant, Episcopal Hospital, based upon vicarious responsibility for unnamed employees.

Our Supreme Court of Pennsylvania supports such a finding of vicarious liability for unnamed employees as follows:

In *Shrum v. Pennsylvania Electric Co.,* 440 Pa. 383, 269 A.2d 502 (1970), our Supreme Court specifically found that a verdict may properly be entered against the entity alone based upon the negligence of a non-named employee. In that case, an employee who had been named as a defendant was exonerated, but the verdict against the Pennsylvania Electric Company was affirmed based upon liability stemming from the negligence of "another employee" who was not named. 440 Pa. at 387, 269 A.2d at 505.

In *Pryor v. Chambersburg Oil and Gas Co.,* 376 Pa. 521, 103 A.2d 425 (1954), our Supreme Court again specifically condoned the imposition of liability against an employer named as a defendant despite the jury's absolving the named defendant employee, as the jury could have found this company negligent "because of an act or omission by its president" (who was not named in the lawsuit). 376 Pa. at 529, 103 A.2d at 429.

In *Stark v. Lehigh Foundries Inc.,* 388 Pa. 1, 130 A.2d 123 (1970), our Supreme Court again condoned holding the defendant company liable in view of the actions or omissions of one of its employees who was not named as a defendant. 388 Pa. at 12-13, 130 A.2d at 129.

There was no error in including defendant, Episcopal Hospital, on the verdict form.

### III. *The Jury's Loss of Consortium Award Is Not Supported by the Evidence*

Plaintiff, Ana Torres, was rendered catastrophically and permanently injured as a result of this incident. She became wheelchair-bound and disabled with regard to activities of daily living and ambulation. Defendants point out that plaintiff, Pedro Torres, had been ill since 1998 and that he had "been placed in nursing home care in January of 1999." Obviously, it was within the "common sense" of this jury to conclude that had Ms. Torres not sustained these injuries as a result of the negligence of these defendants, she would have been able to provide services and assistance to her husband to avoid the necessity of this nursing home placement. The defendants' argument that there is "little evidence" in this regard ignores the directives of all relevant authorities, including the fact that such an award is peculiarly for the common sense and sound judgment of a jury. *Nudelman v. Gilbride,* 436 Pa. Super. 44, 647 A.2d 233 (1994).

The loss of consortium finding by the jury is adequately based on the record in this case and there is no error.

Accordingly, there is no basis for the defendants' motion for judgment n.o.v.

## MOTION FOR NEW TRIAL

### I. *The Jury's Apportionment of Damages Against Defendant, Episcopal Hospital, Is Irreconcilably Inconsistent With the Apportionment of Damages Against George Kozub*

The jury in its wisdom sorted out the appropriate percentages of responsibility for named and unnamed employees of Episcopal Hospital, and this court cannot alter that finding by the jury based on the record in this case.

### II. *Instructional Errors Require a New Trial Because:*

### A. A Res Ipsa Loquitur Charge Should Not Have Been Given to the Jury

In order to warrant a new trial with regard to an objection to a court's instructions to the jury, the complaining party must establish (a) that a charge was erroneous, and (b) that this erroneous charge controlled the outcome of the case. *Stewart v. Motts,* 539 Pa. 596, 654 A.2d 535 (1995).

Relying on the Pennsylvania Superior Court's recent pronouncement in *D'Ardenne v. Strawbridge & Clothier,* 712 A.2d 318 (Pa. Super. 1998), this court provided the jury with a res ipsa loquitur charge. As that court clearly disclosed, "it is important to remember that res ipsa loquitur is merely a rule of circumstantial evidence." 712 A.2d at 320. Thus, in light of the fact that all juries are entitled to consider both direct and circumstantial evidence, these defendants have not, because they cannot, disclose how such a charge could "control the outcome of the case." See Pennsylvania Suggested Standard Civil Jury Instruction 5.07 and the authorities referred to in the subcommittee note thereto. Significantly, these defendants

never submitted a proposed jury interrogatory to this court to determine whether any finding by this jury was made on the basis of such direct or circumstantial evidence, and they never submitted such an interrogatory to determine whether their decision was based upon res ipsa loquitur.

In *Gilbert v. Korvette's Inc.,* 457 Pa. 602, 327 A.2d 94 (1974), our Supreme Court adopted section 328D of the Restatement (Second) of Torts, including its provisions that "it is the function of the court to determine whether the inference may reasonably be drawn by the jury" and, where this finding is made, "it is the function of the jury to determine whether the inference is to be drawn." Section 328D(2), (3). As in most cases, this jury was properly authorized to make its finding based upon either direct or circumstantial evidence.

The fallacy of the argument of these defendants is clearly revealed on page 13 of their memorandum where they attempt to distinguish *D'Ardenne* by saying, in that case, "there was a dispute as to the cause of the accident," as in that case, the cause was "hotly contested." The fallacy of this statement is clearly revealed by their counsel's closing argument to the jury where she admits:

"I like to keep things simple. There is no question that Mrs. Torres fell. *We don't know exactly what happened."* (6/18/99, p. 115.)

Further, when inquired of by this court as to whether these defendants contended that the cause of this incident was so clear as to warrant a directed verdict, their counsel unequivocally responded: *"No."* (6/18/99, p. 30.)

In this matter, the various fact and expert witnesses posed various possible causes for this incident, including:

\*placement of an air blower heater on the header of the subject doorway;

*removal of the motion sensor from the header and placing it on the heater;

*removal of the motion sensor and replacing it with a motion/presence detector;

*removal of the motion/presence detector and replacing it with a motion sensor;

*failing to properly adjust or aim the motion sensor;

*failing to properly adjust or aim the motion/presence detector;

*creating a "dead zone" or an area of non-detection under the heater;

*adjusting the safety time delay from three seconds to zero;

*adjusting the safety time delay from three seconds to 1.5 seconds;

*removal of the original safety beams from beyond the door threshold;

*replacement of original safety beams with inappropriate safety beams;

*placement of the safety beams at improper levels;

*failure to conduct inspections or "walk through" by Episcopal Hospital Safety and Security Department;

*failure to conduct inspections or "walk through" by Episcopal Hospital Engineering Department;

*failure of Episcopal Hospital to comply with contractual obligations;

*failure of Episcopal Hospital employees to report problems with the doors;

*failure of ADS employees to report problems with the doors; and

*direction by Episcopal Hospital employees to adjust and reduce the time delay.

The record in this matter reveals that there was, in fact, "a dispute" as to the cause of this incident, and that it

was, in fact, "hotly contested." An examination of the opinion by the Superior Court in *D'Ardenne* and the authorities referred to therein, reveals the appropriateness of this court's res ipsa loquitur charge. Specifically, that court provided authorities including:

*Williams v. Otis Elevator Co.,* 409 Pa. Super. 486, 598 A.2d 302 (1991), finding that the trial court did not err in providing this instruction despite specific evidence of negligent maintenance of an elevator where the experts could not identify the exact cause of the accident.

*Smith v. City of Chester,* 357 Pa. Super. 24, 515 A.2d 303 (1986), finding that trial court did err in refusing to give this charge where there was specific evidence that an iron grate was porous, weak and that a paver had just rolled over it, but the experts could not agree which caused this grate to break.

*W. Page Keaton, Prosser & Keaton on the Law of Torts §40 (5th ed. 1984), providing four "scenarios" which reveals, at "scenario two," that where a plaintiff does not "clearly and indubitably" establish the specific cause of the incident, the res ipsa loquitur charge is appropriate.

*Farley v. Philadelphia Traction Co.,* 132 Pa. 58, 18 A. 1090 (1890), which provides that this charge is not appropriate where the cause of the incident is "full, clear, undoubted and uncontradicted."

*Hollywood Shop Inc. v. Pennsylvania Gas & Water Co.,* 270 Pa. Super. 245, 411 A.2d 509 (1979), which adopted the rationale in *Weigand v. Pennsylvania Railroad Co.,* 267 F.2d 281 (3d Cir. 1959), which specifically condones presenting a case to a jury based upon the alternate theories of both specific negligence and res ipsa loquitur, and disclosing that to force a plaintiff to abandon one of these, "is not only illogical but unfair."

The *D'Ardenne* court, citing *Smith v. City of Chester, supra,* stated that this charge is particularly appropriate where a plaintiff presents as specific a case of negligence as possible, yet is unable to demonstrate "the *exact* cause of the accident," and adds that "where, as here, the plaintiff's specific evidence of negligence is directly disputed by the defendant, it may be especially important . . . ." *D'Ardenne, supra* at 325. (emphasis in original)

In response to the uncontroverted record in this matter and the above authorities, these defendants state in their memorandum that "there is no question" that "a dead zone existed" at the time of this incident. (P. 13.) However, the cause of this "dead zone," and who was responsible for it is not clear. As their counsel admitted in her representations to this jury: *"We don't know exactly what happened."* (6/18/99, p. 115.)

Accordingly, the charge on res ipsa was appropriate.

### B. Charge As to Life Expectancy Should Not Have Been Given to the Jury

The defendants' instant argument is found at page 14 of their memorandum, which states that "there was no evidence that Mrs. Torres' injuries were permanent."

William H. Simon M.D., in his videotaped trial testimony, reveals that:

"Based upon the fact that she had been injured for over a year before I saw her and she still had the sciatica and she still had the nonunion, it would be my opinion, based upon that evaluation in 1996, 1997, that these problems were permanent." (5/12/99, p. 50.)

"So I can say it with reasonable medical certainty that the consequences of her accident, namely, the fracture that did not go on to complete healing or has a nonunion in it, and the degenerative disc problem that had additional problems causing sciatica, will be permanent. And

the consequence of that, of course, is her right hip pain." (5/12/99, p. 51.)

"The causes of her pain are permanent based upon my evaluation over a year after her injury." (5/12/99, p. 52.)

In its charge, this court provided Pennsylvania Suggested Standard Civil Jury Instruction 6.21, which refers to the "life tables" referenced in defendants' argument, and also provided the admonition that the life expectancy data contained therein "is offered to you only as a guide, you are not bound to accept it." As is revealed by the subcommittee note to this instruction:

"In every case where there is evidence of permanency (including scars), a charge with respect to life expectancy of the plaintiff should be given." (Parenthetical information in the original.)

Accordingly, assuming arguendo that Dr. Simon's testimony was not as is set forth above, the fact that this plaintiff is left with a scar following the required hip surgery also supports this charge. (See description of surgery by Dr. Meller, including 6/10/99, pp. 39, 44 and 45.)

The charge dealing with life expectancy was without error.

### C. The Jury Should Have Been Charged That Under the Law, Episcopal Can Satisfy Its Duty of Reasonable Care by Contracting With Defendant, Advanced Door Service Inc.

As noted, *supra,* there is independent evidence of Episcopal's own negligence and, therefore, Episcopal could not avoid responsibility by claiming a delegation of its responsibility by means of its contract with defendant, Advanced Door Service Inc.

There is no error here.

## D. Plaintiffs' Counsel Made Prejudicial Remarks During Closing Argument

A review of the testimony of Dr. Meller and of the statements of counsel in closing reveals that no unfairly prejudicial remarks were made. Further, assuming that such was the case, counsel for these defendants neither asked for a mistrial nor a curative instruction at any time during counsel's argument. These defendants claim "unfair prejudice" for the first time in their instant memorandum, and have thereby waived this argument. See *McMillen v. 84 Lumber Inc.,* 538 Pa. 567, 649 A.2d 932 (1984).

This court did not preclude plaintiffs' counsel from revealing to this jury the possible bias of Dr. Meller with regard to his relationship with counsel for these defendants. During cross-examination of this witness, it was revealed:

"Mr. Fiel: Isn't it a fact that Anna Bryan, Esquire, is your lawyer?

"Ms. Bryan: Objection.

"The Court: Overruled. Well, objection is sustained as to the form of the question. Ask it another way.

"Mr. Fiel: Sir, isn't it a fact that Anna Bryan represents you?

"Ms. Bryan: Objection.

"The Witness: Yes.

"The Court: Overruled. I'll allow the answer.

"Mr. Fiel: I'm sorry, sir.

"The Court: He said yes.

"Mr. Fiel: Isn't it a fact she represents you personally in two matters?

"Ms. Bryan: Objection.

"The Court: Overruled.

"The Witness: Incorrect. I believe that is one matter.

"Mr. Fiel: Has she represented you in another matter as well as the one matter which is pending now?

"The Witness: She has represented me in one matter.

"Mr. Fiel: I'm sorry.

"The Witness: She has represented me in one matter." (6/8/99, pp. 116-17.)

Contrary to the representations made by these defendants, it is clear that this court did not preclude reference to this prior representation. It is clear that the subject comments of counsel were proper, and were not unfairly prejudicial.

### E. The Jury's Assessment of Damages Was Excessive and Against the Great Weight of Evidence

This record completely justifies the finding of the jury as to damages.

### F. Plaintiffs' Expert, William Simon M.D., Was Improperly Permitted To Testify Beyond the Fair Scope of His Pretrial Reports

In this argument, these defendants assert that plaintiff's, Ana Torres', treating and expert orthopedic surgeon, somehow testified beyond the scope of his pretrial disclosures, and that this testimony somehow was unfair and prejudicial surprise. Our authorities provide that the determination in this regard is based not simply upon whether the trial testimony goes beyond that which is explicitly stated in such pretrial disclosures, but whether the testimony goes beyond that which the adversary should have reasonably anticipated, and whether the testimony was, in fact, prejudicial. *Augustine by Augustine v. Delgado,* 332 Pa. Super. 194, 481 A.2d 319 (1984). These defendants can demonstrate neither of these elements.

In determining whether to admit such expert testimony into evidence, a trial judge has wide discretion and will not be reversed unless there has been a clear abuse of this discretion. *Greer v. Bryant,* 423 Pa. Super. 608, 621 A.2d 999 (1997). Pennsylvania courts have consistently provided that experts can expand on and amplify upon their pretrial reports, as long as they do not proffer a new theory or present trial testimony inconsistent with the fair scope of their reports. See *Chanthavong v. Tran,* 452 Pa. Super. 378, 682 A.2d 334 (1996); *Dible v. Vagley,* 417 Pa. Super. 302, 612 A.2d 493 (1992).

The policy behind applicable Rule 4003.5 is to prevent "unfair surprise," and only relates to testimony which is so different in kind from pretrial disclosures as to preclude the adverse party an opportunity for meaningful response. Our courts have held that there are no definite rules for the exercise of a trial court's discretion in this regard, and this "fair scope" determination must be made on a case-by-case basis. *Wilkes-Barre Iron & Wire Works Inc. v. Pargas of Wilkes-Barre Inc.,* 348 Pa. Super. 285, 502 A.2d 210 (1985). Our Superior Court in *Millard v. Nagle,* 402 Pa. Super. 376, 587 A.2d 10 (1991), directed that in making this determination, the emphasis is on the word "unfair," and that court stated that this specifically "contemplates a reasonable explanation and even an enlargement of the expert's recent words."

After providing over two pages of "string citations" in which they reluctantly admit that experts must merely testify within the "fair scope" of their pretrial reports, Pa.R.C.P. 4003.5(c), and after acknowledging that the relevant inquiry involves a determination of whether the expert's report "provides sufficient notice" to enable the adversary to prepare a response or rebuttal witness, *Christiansen v. Silfies,* 446 Pa. Super. 464, 667 A.2d 396

(1995), these defendants finally reveal the crux of their argument. Specifically, on page 27 of their memorandum, they take the position that Dr. Simon's pretrial reference to "incomplete bony union" presents a "vast substantive difference" with his testimony in which he uses the phrase "nonunion."

First, with reference to the radiology studies in general, Dr. Simon testified:

"It says that there was not complete union of the fracture. In other words, they could see the fracture line still there . . . The fact that you can still see the fracture unhealed means that it has not healed or it's nonunion" (5/12/99, p. 44), and later with specific regard to the tomogram studies, *(and without objection),* he testified:

"I went over the tomograms indicating that there was not complete union. There was a nonunion" (5/12/99, p. 47); and lastly, *(and without objection),* he testified:

"I indicated at that time that I was concerned about the source of her pain. The two most obvious causes or possible causes of that pain were that she did not have solid union of the fracture. That is, she had painful nonunion, and that the other she had some injury when she fell to the disc in her low back that was causing this right sciatic type of pain." (5/12/99, p. 25.)

These defendants provide the citations of *Takes v. Metropolitan Edison Co.,* 440 Pa. Super. 101, 655 A.2d 138 (1995); *Jones v. Constantino,* 429 Pa. Super. 73, 631 A.2d 1289 (1993); and *Wilkes-Barre Iron & Wire Works Inc. v. Pargas of Wilkes-Barre Inc.,* 348 Pa. Super. 285, 502 A.2d 210 (1985), despite the fact that each of these authorities support this court's trial rulings. In each of these cases, the experts were not simply explaining or expanding upon the particulars of their pretrial disclosures, but, instead, were offering completely new theo-

ries of liability. In *Takes,* the pretrial disclosure did not disclose any tests or experiments relied upon and, accordingly, that court precluded any reference to a specific test or experiment. In *Jones,* the expert doctor's pretrial disclosures contended that there was no negligence and gave no theory about how the injury occurred and was accordingly precluded from concluding how it likely happened. In *Wilkes-Barre,* the expert's pretrial disclosures revealed the need for a protective device on the product in general and, at trial, was accordingly precluded from testifying that it needed a permanently attached device where the issue of removability was relied upon by the defendant.

In the case of *Chanthavong v. Tran,* 452 Pa. Super. 378, 682 A.2d 334 (1996), the expert physician's pretrial disclosures revealed a herniated disc but made no comment as to whether that plaintiff had suffered a "serious injury as a result of the accident" or the "type of pain and suffering caused by such an injury." Our Superior Court found that that trial court had abused its discretion in not permitting the expert to testify to these areas which were not specifically disclosed, and stated:

"[I]t naturally followed that [plaintiff] would attempt to establish not only the fact that he had sustained an injury, but also the effects thereof. We cannot see how [the expert's] testimony would have surprised [defendant] or prevented him from preparing a meaningful response." 452 Pa. Super. at 389, 682 A.2d at 340.

Assuming arguendo that the testimony of Dr. Simon was not within the "fair scope" of his pretrial disclosures, these defendants have not, because they cannot, claim "unfair surprise" or a lack of "sufficient notice" to prepare rebuttal testimony. In this regard, they have failed to disclose that the trial testimony of Dr. Simon was taken

by videotape deposition on May 12, 1999, and that defendants' corresponding medical testimony of Anthony S. Puglisi M.D. was taken on May 18, 1999, and defendants' corresponding medical testimony of Kelly Krozer M.D. was not completed until June 16, 1999. *Astoundingly,* these defendants have also failed to disclose that they actually had Dr. Puglisi and Dr. Krozer address and rebut the issue of "nonunion" that they complained about herein.

Lastly, and as is revealed above, these defendants failed to timely object to this testimony of Dr. Simon and have thereby waived the instant argument. See *Collincini v. Honeywell Inc.,* 411 Pa. Super. 166, 601 A.2d 292 (1992); Philadelphia Civil Rule *4017.1.

Accordingly, there was no basis for a new trial.