Sadowski *v.* Eazor Express, Inc., Appellant.

Argued November 13, 1968. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and HANNUM, JJ.

*Robert C. Little,* with him *Burns, Manley & Little,* for appellant.

*Theodore M. Tracy,* with him *Stokes, Lurie & Tracy,* for appellee.

OPINION BY HOFFMAN, J., December 12, 1968:

Robert Fowler was the owner of a Ford truck tractor which was purchased new at a cost of $8917.00. On March 29, 1963, it was totally demolished in an accident, leaving a salvage value of $350.00. The within action was brought by Robert Fowler against Eazor Express, Inc. claiming that the negligence of one of its

drivers caused the damage.[1]  The case was tried by a court sitting without a jury which found in favor of the plaintiff in the stipulated sum of $8131.00.  After defendant's exceptions were dismissed, judgment was entered in that amount.

The facts may be set out briefly as follows:

On March 28, 1963, Ronald Fowler was driving the tractor-trailer unit owned by his father, Robert Fowler, in a southerly direction on Route No. 2 in West Virginia.  The vehicle left the highway on the right side of the road and plunged to the bottom of a fifteen foot embankment.

The evidence reflects that the accident occurred at 4:00 a.m.  The tractor was not discovered, however, until about 6:00 a.m.  At about 6:20 a.m. State Police Officer F. W. Lanham arrived on the scene.

When officer Lanham first approached the truck, the dying driver said: "Get me out.  Hurry up and get me out."  Lanham stated that "He was mashed in there, his legs and feet and body and all.  Just his head and arm was hanging out."  Another witness described the situation in this fashion.  "He was mashed up against the dash of the truck.  The seat was shoved in on him and the bulkhead of the trailer.  The steel went through and shoved the back of the seat up on him and he was lying up on the dash with his right arm . . . and . . . his chest hanging out through the windshield over the truck."

Officer Lanham stayed with the driver for approximately thirty minutes.  Ronald Fowler died, still trapped in the wreckage.

At issue in this case is the admissibility and probative value of a statement made by the dying man to the state trooper during this thirty minute period.  It

---

[1] Upon Robert Fowler's death, this action was continued by his administratrix, Catherine Sadowski.

was made approximately ten minutes after the officer came on the scene and fifteen to twenty minutes before death.

The officer testified: "When I questioned him as to what happened he told me that he was going south and that he had to leave the road to keep from getting hit by one of Eazor's trucks and he drove over in there to miss the truck."

The defendant made timely objection to the reception of this statement on the ground that it was hearsay. The trial court admitted the statement under the res gestae exception to the hearsay rule.

There was no eyewitness to the accident. It is conceded that if the statement were to be excluded, the plaintiff could not prevail; the admission of this statement was a necessary and crucial ingredient of the plaintiff's case.

We find no error in the trial judge's determination that the statement to the police officer was made under circumstances which exclude the probability of premeditation or design in its utterance. The law of Pennsylvania in this regard was concisely stated by Judge STALEY in *McCurdy v. Greyhound Corporation*, 346 F. 2d 224, 226 (3rd Cir. 1965).

"Over the years the Pennsylvania courts and this court have recognized that a hearsay statement is admissible as part of the 'res gestae' if made by a participant in the event during a period when he was, for any reason, incapable of reasoned reflection about the occurrence. (citing cases and other material). Such a statement is trustworthy if made during the period when 'considerations of self-interest could not have been brought fully to bear' on the event. 3 Wigmore, Evidence 738 (2d ed.) as quoted in Allen v. Mack, 28 A. 2d at 784. In each case the court is required to examine the facts in light of the general principles. Commonwealth v. Noble, supra. Thus, extensive ex-

amination of applicable authorities and comparison of decisions based on the analysis of other quite diverse fact patterns is neither necessary nor useful. No arbitrary time or other limits on the operation of the rule have been accepted by the Pennsylvania courts. (citing cases.)"

Under these circumstances we can well agree with the trial judge that "On balance and considering all the circumstances, we are convinced that Ronald Fowler, dying in the crushed cab of the Ford truck-tractor, with tons of steel smashing into him, breaking both of his legs, crushing his chest and lacerating his body, begging for help to be pulled out of the death trap, was not engaged in reasoned reflection to determine the outcome of a possible subsequent lawsuit.

"We find that the statement as to how it happened was volunteered at the first opportunity the information was solicited. We find that such a statement to be trustworthy because it was not made during a period when considerations of self-interest were brought fully to bear. We feel that the facts of this case are much stronger than the recent case of McCurdy v. Greyhound Corporation, 346 F. 2d 224 (3rd Circuit), which held that a statement made relating to the headlights of an approaching bus came within the res gestae exception."

In our opinion, however, judgment n.o.v. must be entered for defendant, because the statement, though it be admissible, is insufficient to sustain plaintiff's burden of proof.

The burden was, of course, upon the plaintiff to establish how the accident occurred and that defendant's negligence was the proximate cause of the accident. A verdict may not be based on speculation or conjecture, particularly where the facts of the accident are not sufficiently described or pictured so as to be capable of visualization. *Ebersole v. Beistline,* 368 Pa.

12, 82 A. 2d 11 (1951); *Warden v. Lyons Transportation Lines, Inc.*, 432 Pa. 495, 248 A. 2d 313 (1968).

For example, Ronald Fowler's statement that, "I had to leave the road to keep from getting hit by one of Eazor's trucks," sets forth no facts as to the lane in which he was driving and the lane of the oncoming Eazor truck. The statement contains no factual description of the events causing him to leave the road.

We recognize that the dead man is entitled to a presumption of due care. We further recognize that an inference of negligence arises when a driver permits his automobile to be deflected from its course and to cross the highway into the wrong traffic lane.

The presumption of due care is not evidence, however, and cannot furnish proof of the fact as to where Ronald Fowler was on the road when he observed the Eazor vehicle. For example, Fowler's truck, *without negligence,* may have veered to the wrong side of the road because of the negligent action of a third vehicle, or to avoid a sudden obstruction in the road. Ronald Fowler may have been blinded by lights of another oncoming truck, or may have struck a rut in the road.

These last suggestions are, of course, only conjectural. They serve to illustrate, however, the innumerable possibilities as to the actual facts, all of which are consistent with Ronald Fowler's statement.

In short, the only real evidence in this case is the unclear and ambiguous statement of Ronald Fowler which could not be further explained and is subject to varying inferences. There were no eyewitnesses to the accident. Under such circumstances we cannot find that the plaintiff presented evidence sufficient to establish negligence on the part of the defendant.

For this reason, the judgment of the lower court is reversed and judgment n.o.v. is entered for the defendant.

JACOBS, J., dissents.