361 A.2d 335

**Walter J. KENWORTHY and Louise M. Kenworthy, Appellants,**

v.

**William BURGHART.**

Superior Court of Pennsylvania.
June 28, 1976.

George J. O'Neill, Philadelphia, for appellants.

Robert B. Surrick, Media, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

Appellants, Walter and Louise Kenworthy, filed a complaint in trespass for injuries suffered by Mrs. Kenworthy when she was allegedly struck by a car driven by appellee on January 4, 1968.[1] On March 1, 1973, after a four-day trial, the jury returned a verdict in appellee's favor. Appellant's motion for a new trial was denied by

1. Mr. Kenworthy's cause of action was for loss of his wife's services, consortium, and companionship. For the sake of convenience, this opinion will use the term "appellant" to refer solely to Mrs. Kenworthy.

the trial judge sitting as a court *en banc*, 62 Del.Co. 80 (1974), and this appeal followed. We reverse.

The evidence may be summarized as follows. On January 4, 1968, appellant was employed as a crossing guard at the intersection of Glendale Avenue and Oak Way in Havertown Township, Delaware County. The weather was cold. It had snowed several days before the accident, and, although the parties disputed its extent, there was ice on Glendale Avenue. Appellant had been working at the intersection for approximately one-half hour before the accident, and testified that many other cars proceeding south on Glendale Avenue passed her without incident. At approximately 3:00 p. m., appellant saw appellee's car travelling south on Glendale, towards its intersection with Oak Way. Appellant had just completed supervising the crossing of some school-children, and was walking back towards the east curb of Glendale Avenue when she first observed appellee's car, roughly three hundred feet from the intersection. Estimating that the speed of the car was approximately fifty miles per hour, she began to walk quickly towards the east sidewalk of Glendale Avenue, and when she saw the car skidding across Glendale Avenue and heading towards her, she started to run. According to appellant, appellee's car ran over the curb and onto the sidewalk, striking her right thigh and knocking her onto her buttocks. Appellee, on the other hand, insisted that his car stopped at the curb and did not strike appellant.[2] Appellant's injuries necessitated medical care that included a three-week period in traction at a Philadelphia hospital.

2. Appellee's testimony was partially corroborated by Mrs. Bonnie Weaver, a defense witness. Mrs. Weaver was not an eyewitness, but had driven past the scene shortly after the accident had occurred and stopped to render assistance. She testified that appellant had said to her that "this man [appellee] had slid, his car had slid and *almost* hit her" (N.T. 430; emphasis added). The testimony of Mrs. Katherine Kotos, however, supported appellant. Mrs. Kotos substituted for appellant as crossing guard on the day following the accident, and testified that she saw black tire marks on top of the curb where the accident had occurred.

■ Appellant advances five contentions on this appeal: that the lower court applied the incorrect standard of review in determining whether the verdict was against the weight of the evidence; that the trial judge's bias and prejudicial remarks deprived appellant of a fair trial; that the judge's charge on the law concerning skidding was incorrect; that the judge should not have charged on the doctrine of unavoidable accident; and that the judge erred in charging that the jury could draw an adverse inference from the failure of appellant's husband to testify, and, conversely, in failing so to charge concerning appellee's failure to call one of his examining physicians. We shall not, however, address all of these contentions. The first, concerning the standard of review to be applied in determining the weight of the evidence, was not briefed or argued to the lower court;[3] it was therefore abandoned. *Orga v. Pittsburgh Rys. Co.*, 155 Pa. Super. 82, 85, 38 A.2d 391, 392 (1944); *cf. Commonwealth v. Keysock*, 236 Pa.Super. 474, 478–80, 345 A.2d 767, 770 (1975). The last, on adverse inferences, presumably will not recur on retrial.

I

### Did the Trial Judge's Bias and Prejudicial Remarks Deprive Appellant of a Fair Trial?

■ Counsel for appellant has devoted seventeen pages of his brief to the argument that appellant's case was irremediably prejudiced by "the trial judge's rulings, questions, remarks, and general hostile attitude throughout the trial in the presence of the jury." (Brief for Appellant at 12–28) In considering this argument, we have borne in mind the admonition by Chief Justice Kephart that since allegations of bias and prejudice "constitute the most serious charges that can be hurled against

---

3. This is apparent from Plaintiffs' Brief Sur Motion for New Trial. *See* Exhibits to Brief for Appellee at 5 *et seq.*

a judge, the record must clearly show prejudice, bias, capricious disbelief or prejudgment" before reversal is warranted on this ground alone. *Pusey's Estate,* 321 Pa. 248, 262, 184 A. 844, 850 (1936); *Fischer v. Commercial National Bank,* 321 Pa. 200, 201, 184 A. 57, 58 (1936) ("[n]ew trials for such reasons should be avoided unless the errors complained of are plainly prejudicial to one of the parties"). When the trial judge is assailed as lacking impartiality, "[t]he only way to meet this point is to examine the testimony, not depending upon sentences plucked out here and there." *Biggs v. Public Service Coordinated Transport,* 280 F.2d 311, 314 (3d Cir. 1960) (Goodrich, J.).

■ We have reviewed each portion of the record that according to appellant's counsel demonstrates the trial judge's bias. Contrary to counsel's statement that the trial judge's conduct conveyed to the jurors the impression that "the trial judge did not think much of plaintiff's case nor the way her counsel was presenting it, while on the other hand, he highly respected defense counsel and was sympathetic to defendant" (Brief for Appellant at 27), we think that the judge was making an effort in good faith to clarify the testimony, and to correct counsel's inartful and, from an evidentiary perspective, frequently improper examination of witnesses. This was unquestionably within the judge's discretion. *Slater v. Rimar, Inc.,* 462 Pa. 138, 149, 338 A.2d 584, 589 (1975) (trial judge's inherent power to control course of litigation); *Fischer v. Commercial National Bank, supra* at 202, 184 A. at 58–59 (trial judge's control over extent of cross-examination); *Berry v. Heinel Motors, Inc.,* 162 Pa.Super. 52, 58, 56 A.2d 374, 377 (1948) (same). *See also Mittleman v. Bartikowsky,* 283 Pa. 485, 486, 129 A. 566, 567 (1925); *Dougherty v. Waterman S. S. Corp.,* 265 F.2d 284, 288 (3d Cir. 1959). We agree with the trial judge's statement that a judge "must be more than a mere umpire," 62 Del.Co. at 82, and are of the opinion that the

trial judge's conduct of this case was aimed at the enhancement, rather than the diminution, of the fairness of the trial.

## II

### Did the Trial Judge Err in Charging on the Doctrine of Unavoidable Accident?

In his charge the trial judge said:

Now, members of the Jury, sometimes the happening of an accident is unavoidable and happens or occurs without a Defendant being negligent. On the other hand, a fact that an accident occurs does not of itself prove that there was negligence on anyone's part.

You must determine the true facts in light of the law as we have given it to you as respects the matter of negligence, to determine whether or not the defendant was negligent. If after doing so you conclude the Defendant was not negligent and that the accident was unavoidable, that is with the exercise of reasonable duty, of care required and defined for you, the Defendant did not cause nor could have avoided the happening of this accident, then no one can recover.
(N.T. 455)

██ Appellant is correct that no change on the doctrine of unavoidable accident should have been given if "on no possible theory" could the accident have been unavoidable. *Matthews v. Derencin,* 360 Pa. 349, 352, 62 A.2d 6, 7–8 (1948). In *Matthews,* the trial judge charged that " '[i]f this was purely an unavoidable accident, there can be no recovery in this case.' " *Id.* at 352, 62 A.2d at 7. The Supreme Court held the charge improper since "the testimony firmly established that there must have been negligence" on the part of either or both of the defendants. *Id.* at 353, 62 A.2d at 8. In the present case, however, the evidence was not as unequivocal. The evidence of both parties showed that there was ice on the

surface of Glendale Avenue, although there was divergent testimony concerning the location and extent of the ice. In addition, appellee testified that although his speed was only ten to fifteen miles per hour, he was unable to see the ice until he was practically on top of it, that he began to skid, and that there was nothing he could do to control his car. Therefore, the evidence warranted a charge on unavoidable accident.

## III

### Did the Trial Judge Err in Charging on the Law Concerning Skidding?

—A—

In the course of his charge, the trial judge read certain relevant sections of The Vehicle Code.[4] Specifically, the jury was instructed on the statutory duty to drive on the right side of the highway:

> Upon all highways of sufficient width, except upon one-way streets, the driver of a vehicle shall drive the same upon the right half of the highway, and shall drive as closely as possible to the right-hand edge or curb of such highway, unless it is impracticable to travel on such side of the highway.
> (N.T. 459; 75 P.S. § 1004) [5]

The judge then charged on the effect of a violation of this duty:

> Your determination that a driver did violate a rule of the road will make him negligent, but it will not also make him liable for any injury or damage either to himself or to another, unless you also find that that

4. Act of April 29, 1959, P.L. 58, § 101 *et seq.*, 75 P.S. § 101 *et seq.*

5. Section 1004 of The Vehicle Code has been amended since the date of the trial in this case in respects not relevant here. Act of Dec. 12, 1973, P.L. 393, No. 139, § 1; Act of Oct. 2, 1974, P.L. 670, No. 223, § 1.

violation did in fact proximately cause the injury or accident.

(N.T. 461)

These instructions, it will be observed, would have permitted the jury to find appellee negligent had it found that appellee's car crossed Glendale Ave. and struck appellant. The question presented by this case is whether the judge's charge on skidding undid the instructions by incorrectly exculpating appellee from the effect of a violation of 75 P.S. § 1004, thereby correspondingly increasing appellant's burden of proving negligence. We conclude that the charge on skidding did have this result, and we hold that the effect of a violation of 75 P.S. § 1004 should be stated in the manner set forth in a proposed Pennsylvania Standard Jury Instruction.[6] Since the error in the charge on skidding may have had a determinative effect on the outcome of the case, a new trial must be awarded. *Noel v. Puckett*, 427 Pa. 328, 332, 235 A.2d 380, 382 (1967).

—B—

The court charged on the law concerning skidding as follows:

In this case, members of the Jury, there is testimony that the Defendant skidded on ice, or on a patch or patches of ice, which brought him to the wrong side of the highway. The fact that a vehicle skids does not in and of itself establish or constitute negligence. *Where skidding is evident in the Plaintiff's case against the Defendant, then it is the Plaintiff's burden to prove that the skidding of the Defendant's car was caused by or resulted from some act of negligence, as we defined it for you, on the Defendant's part.*

6. *See* Pennsylvania Standard Jury Instructions, Civil Subcommittee Drafts, Instruction No. 3.31 and Subcommittee Note, at 51–52 (1972) *and* Part III D of this opinion, *infra*.

*Otherwise, the Defendant cannot be charged with negligence only or merely because of the skidding itself.*

Before a Defendant can be found negligent or responsible for any damage or injury resulting from the skidding, it must be found that the Defendant mismanaged or carelessly or negligently operated his car prior to the skidding, or operated it at an excessive rate of speed under the circumstances, or that the skidding was a result of carelessness or inattention.

We have said skidding itself is not negligent. What constitutes negligence in a skidding accident is a Defendant's lack of reasonable care in the circumstances which caused or brought about the resultant skidding. Even the most expert and careful drivers can and do skid, so that skidding alone does not mean of itself that a driver was negligent.

However, a driver is expected to know that cars may skid, and should guard against such an event, if reasonably possible; and therefore to be aware of the condition of the highway to exercise control commensurable with the conditions of which he is or should be reasonably by the circumstances, be or become aware.

It is not therefore the mere action of skidding that is negligent or constitutes negligent conduct; it is that you must look to the reason for or conduct that brought about the skidding to decide if that conduct was negligence and brought about the resultant skidding.

(N.T. 461–463; emphasis added)

These instructions were repeated to the jury when it returned to the courtroom during its deliberations to receive a response to a written question that it had addressed to the trial judge.[7] Therefore, it was twice im-

---

7. The jury asked the following question: "What is the law concerning negligence in the Motor Vehicle Code?" (N.T. 514) The judge thereupon reread the relevant sections of The Vehicle Code,

pressed upon the jurors that if appellant's evidence showed that appellee's car had skidded, it was then appellant's burden to prove that the skidding was negligently caused.

In its opinion denying appellant's motion for a new trial, the lower court justified the charge on skidding by citing *Richardson v. Patterson,* 368 Pa. 495, 84 A.2d 342 (1951), and *Matkevich v. Robertson,* 403 Pa. 200, 169 A.2d 91 (1961). In the court's opinion, those cases justified the instructions on the burden of proof since the evidence of skidding appeared in conjunction with appellant's proof that appellee's car had crossed to the wrong side of the road. The court conceded that had appellant not mentioned the word "skidding" but had proved merely that appellee had crossed to the wrong side of the road, then "the burden passes to defendant [appellee] to exculpate himself from any negligence." 62 Del.Co. at 85.

## —C—

We empathize with the lower court's difficulty in distilling the law governing accidents in which the defendant's car has "skidded" on to the wrong side of a highway. As one commentator has noted, a study of the "proliferation of decisions" by appellate courts in this area "often approaches an exercise in futility." *Meyer, Proof of Negligence: Exclusive Control and Other Doctrines (An Exercise in Semantics?),* 41 Temp.L.Q. 383 (1968). It is hoped that this opinion will serve as an alembic.

The old Pennsylvania rule concerning skidding vehicles is, indeed, embodied in *Richardson v. Patterson, supra.* Although the *Richardson* court noted that "[t]he presence of an automobile on the wrong side of a highway is prima facie evidence of the driver's negligence,"

instructed the jury once again on the effect of a statutory violation, and repeated his charge on skidding. (N.T. 515–520)

368 Pa. at 498, 84 A.2d at 343, it observed that the plaintiff's evidence itself disclosed that the defendant's car had crossed to the wrong side of the highway as a result of "skidding:"

> Had the plaintiff been content with proving that the collision occurred in the westbound lane where [the defendant's] car, proceeding eastwardly, should not have been, the burden would have been upon the defendant to offer exculpatory proof if she wished to be found not guilty of causative negligence. . . . But, here, the explanation of how the [defendant's] car came to be in the wrong traffic lane was supplied by the plaintiff himself when he offered evidence that it was the result of skidding. *It then became the duty of the plaintiff to offer testimony from which the jury could infer that the skid resulted from negligence on the part of the driver.*

*Id.* (Emphasis added)

Thus, the success or failure of a plaintiff's case was made to depend upon whether in presenting his case he mentioned the cardinal, almost magical, word "skidding."

The *Richardson* rule proved to have a stubborn vitality. As late as 1961, over a spirited dissent by Mr. Justice Musmanno, the Supreme Court reaffirmed the rule when in *Matkevich v. Robertson, supra* at 203, 169 A.2d at 93, it again made the outcome of a case turn upon which party used the word "skidding:"

> This is not the case of *Richardson v. Patterson,* [citation omitted] wherein the plaintiff's *own* evidence showed that the other car skidded and then came over on the wrong side of the road as a result of the skidding. As that case pointed out, skidding in itself does not constitute negligence, and if the *plaintiff's testimony* shows the defendant's car *skidded* over on the wrong side of the road, *then it is incumbent upon him to go further* and show that the skidding was a result

of negligent operation of the car. However, *where, as here, the plaintiff is content to prove a collision as a result of the defendant's car being on the wrong side of the road, the burden is upon the defendant to offer exculpatory proof.* (Emphasis partially in original and partially supplied).

*See also Nixon v. Chiarilli*, 385 Pa. 218, 222, 122 A.2d 710, 713 (1956).

Two years later, however, the *Richardson* rule was explicitly disapproved. In characteristically colorful language, Mr. Justice Musmanno, speaking for the Supreme Court, pointed out its infirmities:

> This kind of a ruling amounts practically to an invitation to strategic testimony instead of forthright testimony. Although the plaintiff saw the defendant skid across the medial strip and so stated, the Court [in *Richardson v. Patterson*] suggests he should not have so stated because, and here is the blast of the shotgun, "the explanation of how the Patterson (defendant) car came to be in the wrong traffic lane was supplied by the plaintiff himself when he offered evidence that it was the result of skidding." But the plaintiff's statement was no explanation of the *cause* [emphasis in original] for the defendant's car being on the wrong side of the highway. *No matter how the defendant found herself in the wrong lane, she was where she had no right to be, and it was her obligation to explain what she was doing there, and how she got there* . . .

> When a motorist is on his right side of the highway, obeying all the rules of the highway, being careful, cautious and considerate of the rights of others, and suddenly he sees coming toward him, like a gargantuan genie, a destroying force, it is not for him to explain how and why the invader got into his way. *Certainly a pedestrian on the sidewalk, when he is struck by a*

*car which skids from the highway on to the sidewalk, injuring him, is not required by the law to employ mechanics to inspect the invading vehicle, and surveyors to measure the distances, and to look for witnesses to testify to the undue speed, mechanical difficulties or other causes for the intruder's violent trespassing.* Campbell v. Fiorot, 411 Pa. 157, 162, 191 A.2d 657, 659 (1963) (except as noted, emphasis added)

*Kralik v. Cromwell,* 435 Pa. 613, 258 A.2d 654 (1969), is to the same effect. There, part of the trial judge's charge was markedly similar to the one delivered in the instant case:

> "Because a car skids doesn't necessarily mean that the driver of that car was negligent; . . ." "The plaintiff to establish negligence must prove that the defendant had mismanaged his car prior to the skidding . . . or that the . . . skidding was the result of his [defendant's] carelessness . . . ." *Id.* at 617, 258 A.2d at 657.

The Supreme Court concluded that this charge was improper. Although the case was not one where the defendant's car had skidded across a highway, but rather involved a rear end collision on a road covered with "occasional spots of ice," *id.,* the Court nonetheless drew an analogy to skidding cases:

> The instant situation is analogous to that where the evidence of the plaintiff establishes, without more, an automobile collision resulting from defendant's automobile being on the wrong side of the highway, and the defendant attempts to escape blame for the collision by showing that roadway conditions caused his automobile to "skid" out of control. In such a case, it is not the plaintiff's burden to prove that the skidding was due to the defendant's careless driving. *Id.* at 618, 258 A.2d at 657.

In the present case, the lower court's opinion would distinguish *Kralik* by limiting its applicability to cases "[w]here skidding is not evident in the plaintiff's case." 62 Del.Co. at 85 (emphasis omitted). In light of *Campbell v. Fiorot, supra,* however, this distinction is not tenable.[8] *See also* Musmanno, Book Review, 6 Duq.L. Rev. 256 (1967–68).

The decisions of this court also recognize that *Campbell v. Fiorot, supra,* represents the correct statement of the law. The policy underlying the *Campbell* rule was succinctly stated by the late Judge Spaulding:

In "wrong side of the road" accidents, i. e. where one car suddenly enters the lane of oncoming traffic and an accident occurs, it is too great a burden to make the injured party prove that the defendant's act was a result of his negligence and would often result in the defendant's unjustly escaping liability. To avoid this inequitable result, our courts have held that unless the defendant can explain his presence in the wrong lane, negligence can be inferred. *Fair v. Snowball Express, Inc.,* 226 Pa.Super. 295, 298, 310 A.2d 386, 388 (1973).

*See also Sudowski v. Eazor Express, Inc.,* 213 Pa.Super. 471, 476, 249 A.2d 842, 844 (1968); *Denman v. Rhodes,* 206 Pa.Super. 457, 459, 214 A.2d 274, 275 (1965). The federal courts, applying Pennsylvania law in diversity cases, have also followed the *Campbell* rule. *See, e. g., Sowizral v. Hughes,* 333 F.2d 829, 833 (3d Cir. 1964) (Forman, J.); *Ward v. McDan Dav Leasing Corp.,* 340 F.Supp. 86, 93 (W.D.Pa.1972), *aff'd mem.,* 485 F.2d 678 (3d Cir. 1973).

---

**8.** It is possible that the lower court's analysis of *Kralik* was suggested by the citation to *Matkevich v. Robertson, supra,* which followed the passage from *Kralik* quoted *supra.* We admit our own inability to understand why the Supreme Court cited *Matkevich* in *Kralik,* since *Matkevich* was implicitly overruled in *Campbell.*

—D—

■ On retrial, the charge on skidding should not employ the language disapproved by the Supreme Court in *Kralik v. Cromwell, supra.* For example, the judge is not to charge that "skidding itself is not negligence," or that the plaintiff must prove that the defendant mismanaged his car before it skidded. Similarly, the charge on burden of proof must conform to the rule stated in *Campbell v. Fiorot, supra.* A useful model is provided by Instruction number 3.31 of the proposed Pennsylvania Standard Jury Instructions—Civil:

> 3.31 (Civ) Evidence of Negligence—Violation of Statute (With Exculpatory Explanation)

> An Act of Assembly of this Commonwealth, in effect at the time the accident occurred, provided in part [here the judge would read 75 P.S. § 1004]. This Act dictates the duty of care normally required of a person in the same situation as the defendant. Ordinarily, the unexplained violation of this Act would constitute negligence as a matter of law. However, in this case the defendant has presented evidence in excuse or justification of the alleged violation [skidding]. Under such circumstances, the person offering such excuse has the burden of proof. Therefore, if you find that there was a violation of this act, it would only be evidence of negligence which you should consider along with all the other evidence presented on the question of whether the defendant was negligent. [Bracketed matrial supplied]

> Pennsylvania Standard Jury Instructions, Civil Subcommittee Drafts, No. 3.31, at 51–52 (1972).

It is noteworthy that the Subcommittee Note to this instruction states that it is applicable to cases in which "the defendant is charged with negligence in operating his vehicle on the wrong side of a two way street." *Id.* at 52.

In summary, we conclude that the charge in this case misstated Pennsylvania law governing a "skidding" case. Consequently, the order of June 20, 1974, denying the motion for new trial is reversed with a *venire facias de novo.*

PRICE, J., concurs in the result.