**Atwood v. Power Systems Electric Inc.**

474

*Phinorice J. Boldin,* for plaintiff.
*Ronald H. Pollock,* for defendants Power Systems Electric Inc. and Hoover.
*Michael W. Wagman,* for defendant Landvator.

EVANS, *J.,* December 12, 2005—After a three-day trial in August 2005, the jury in this claim for personal injuries arising out of a motor vehicle accident returned a verdict in favor of plaintiff Michael J. Atwood and against defendants Tina Landvater and Mervin Hoover.[1]

---

1. At the time of the accident, Mr. Hoover was operating a vehicle owned by his employer, Power Systems Electric Inc., and was in the course and scope of his employment. Accordingly, defendant Power

Fault for the accident was attributed as follows: 50 percent to defendant Landvater, 25 percent to defendant Hoover, and 25 percent to plaintiff Michael Atwood. Following the verdict, defendants Landvater and Hoover filed timely post-trial motions. Defendant Landvater requests a new trial on all issues, or alternatively, on damages only. Defendant Hoover seeks a new trial on damages. Defendants raise the following post-trial issues:

(1) whether the court erred in permitting plaintiff's medical expert to testify concerning prior medical reports and records because he was "simply a conduit or transmitter" of opinions and conclusions in response to questions from counsel;

(2) whether the court erred in its negligence charge by not including a skidding instruction; and

(3) whether the court erred in not including the word "psychiatric" in its charge on plaintiff's duty to mitigate damages.

After a review of the entire record, as well as the briefs submitted on behalf of the parties, the court finds the defendants' assignments of error to be without merit, and therefore the post-trial motions are denied.

## 1. THE TESTIMONY OF PLAINTIFF'S MEDICAL EXPERT DR. BONG LEE

First, defendant Hoover seeks post-trial relief claiming that the court erred in permitting certain testimony from plaintiff's medical expert, Dr. Bong Lee. Specifically, defendant Hoover maintains that the court should have ex-

---

Systems Electric was held vicariously liable for the negligent acts of Mr. Hoover.

cluded portions of the videotaped "hearsay testimony of Dr. Lee who merely acted as a conduit or transmitter of the testimony of Drs. Jenkins, Eyerman, and Schultz to corroborate and bolster his own testimony at trial."

Under Pennsylvania law, "medical experts are permitted to express opinions which are based, in part, upon reports which are not in evidence, but which are customarily relied upon by experts in the profession." *Commonwealth v. Thomas,* 444 Pa. 436, 445, 282 A.2d 693, 698 (1971); *Cooper v. Burns,* 376 Pa. Super. 276, 286, 545 A.2d 935, 940 (1988). This has become an exception to the hearsay rule, both under Pennsylvania common law and under Pa.R.E. 803(4).[2]

Courts "recognize that a physician will often base his or her diagnosis on information obtained through other sources such as statements from patients, nurses' reports, hospital records and laboratory tests. The fact that experts reasonably and regularly rely on this type of information merely to practice their profession lends strong indicia of reliability to [the] source material, when it is presented through a qualified expert's eyes." *Woodward v. Chatterjee,* 827 A.2d 433, 444 (Pa. Super. 2003). (citation omitted) As the Superior Court stated in *Primavera v. Celotex Corp.,* 415 Pa. Super. 41, 52, 608 A.2d 515, 521 (1992), *appeal denied,* 533 Pa. 641, 622 A.2d 1374 (1993), expert testimony should be permitted, where "the

---

2. Pa.R.E. 803(4) *Statements for Purposes of Medical Diagnosis or Treatment.* A statement made for purposes of medical treatment, or medical diagnosis in contemplation of treatment, and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to treatment, or diagnosis in contemplation of treatment.

expert uses several sources to arrive at his or her opinion, and has noted the reasonable and ordinary reliance on similar sources by experts in the field and has coupled this reliance with personal observation, knowledge and experience. . . ." Therefore, an expert will be permitted to testify as to the content of another's opinion when he brings it to bear on his own expertise and judgment. *Id.*

In the present case, Dr. Lee conducted an examination and evaluation of plaintiff Atwood and formed certain opinions which he testified to at the trial of this matter. As part of his evaluation, Dr. Lee asked plaintiff about his medical history and also obtained historical information about Mr. Atwood from his review of records relating to plaintiff's prior medical treatment. Dr. Lee testified several times that he customarily relies on the reports of other doctors and that he did so in this case when evaluating plaintiff Atwood. (See transcript of Dr. Lee's deposition at pp. 19, 30, 90.) His testimony establishes that, contrary to the defendant's assertion, he was not blindly reciting the words of others as a mere conduit, but rather, he relied upon prior treatment records, information provided by the plaintiff, and his own evaluation of the plaintiff in reaching his opinions. As the record reflects that Dr. Lee considered these documents in the formulation of his opinions, we find he was properly permitted to testify regarding their contents. See *e.g., Carroll v. Avallone,* 869 A.2d 522, 528 (Pa. Super. 2005).

## 2. THE JURY INSTRUCTION AS TO LANDVATER'S NEGLIGENCE

Defendant Tina Landvater requests a new trial based upon the court's failure to read the following proposed charge to the jury:

"Plaintiffs have the burden of proving negligence on the part of Tina Landvater and the mere fact that her vehicle skidded, without more, does not establish negligence. Plaintiffs must demonstrate by a preponderance of the evidence that the skid occurred as the result of some improper operation of the car by Tina. *Kuhn v. Michael,* 283 Pa. Super. 101, 106, 423 A.2d 735, 738, (1980). If after viewing all of the evidence relating to Tina Landvater in light of the law as I have given it to you, you conclude that Tina was not negligent, then as to her the accident was unavoidable and plaintiff may not recover from her."

A review of the evidence, as well as the jury instructions actually given by the court, reveal that the instructions were fully adequate to assure that defendant Landvater could only be found liable if the jury determined that she was (a) negligent and (b) that her negligence was a factual cause of the plaintiff's harm. The instructions properly framed the issues for the jury and we find no error in failing to give the foregoing charge.

In their complaint, plaintiffs claimed that defendant Landvater negligently lost control of her vehicle, thereby resulting in the collision. Plaintiffs asserted that defendant Landvater was negligent for driving at an excessive rate of speed under conditions of darkness, ice and snow; and for driving over the speed limit in those conditions. At trial, the testimony established that the speed limit was 55 miles per hour. At the time of the accident, however, there were ice patches and snow along the road. (N.T. 21.) The testimony established that defendant Landvater was aware that there was ice and snow on the road. (N.T. 107.)

Plaintiff Atwood testified that he was traveling 45 to 50 miles per hour, which he felt was a safe speed given the conditions. (N.T. 21.) Plaintiff Atwood and an independent witness, Allen Smith, testified that Ms. Landvater passed them traveling at 60 to 65 miles per hour. (N.T. 24, 65-66.) Thereafter, Mr. Hoover decided to pass Mr. Atwood. Plaintiff estimated Mr. Hoover's speed at 55 to 60 miles per hour. (N.T. 23.) Shortly after the Hoover vehicle passed Mr. Atwood, Ms. Landvater hit a patch of ice and lost control of her vehicle. Mr. Hoover hit her and lost control of his vehicle. (N.T. 16-20.) Mr. Atwood was about 50 to 100 feet behind the Landvater and Hoover vehicles when they lost control and he ultimately collided with the Hoover vehicle. (N.T. 24.)

The court's charge on liability covered the standard issues of burden of proof, negligence and factual causation. In addition, the court advised the jury that the "mere happening of an accident does not establish that one of the parties was negligent, but rather, the plaintiffs have the burden of proving their claims." (N.T. 117.) The court defined the concepts of negligence and ordinary care, noting that "what constitutes ordinary care varies according to the particular circumstances and conditions existing then and there." (N.T. 119.) The court also instructed the jury regarding statutory violations under the Pennsylvania Motor Vehicle Code, including assured clear distance ahead and driving in excess of the posted speed limit. (N.T. 120.)

The evidence submitted at trial, while disputed in some respects, was sufficient to support a finding of negligence on the part of Ms. Landvater for failing to use reasonable care and/or for operating her vehicle in excess of the posted speed limit. Under the circumstances, there

was no error in our refusal to read the proposed skidding charge. Moreover, we find that defendant's reliance on cases wherein plaintiffs alleged that a driver skidded over the center line is inapplicable. See *e.g., Kuhn v. Michael,* 283 Pa. Super. 101, 423 A.2d 735 (1980). In such cases, the concern is that mere skidding could create an unrelenting negligence per se standard solely because the defendant skids onto the wrong side of the road, with no opportunity to explain that the skidding was unavoidable and that crossing the center line was not the result of negligence. In those cases, the burden is shifted to the defendant to explain how the skid was unavoidable. *Kenworthy v. Burghart,* 241 Pa. Super. 267, 361 A.2d 335 (1976). This scenario is not at issue in the present case.

The pertinent issue, as properly covered by the court's instructions, was whether defendant Landvater was driving too fast, whether this constituted negligence and whether it caused harm. Moreover, with respect to the statutory violations, the jury was specifically charged that even if it found Ms. Landvater was exceeding the speed limit at the time of the accident, they were still required to determine whether this negligence was a factual cause of the plaintiff's injury.[3] (N.T. 120-21.) Thus, in reviewing the charge as a whole, we find that there was no prejudicial error.

---

3. We note that the court's charge regarding statutory violations was in accordance with Pa.S.S.J.I. (Civ.) 3.30—Negligence per se—Violation of statute. Defendant Landvater did not request an instruction pursuant to Pa.S.S.J.I. (Civ.) 3.31—Evidence of negligence—Violation of statute (with exculpatory explanation).

## 3. THE JURY INSTRUCTION AS TO MITIGATION OF DAMAGES

Defendant Landvater contends that the court erred in failing to insert the word "psychiatric" in front of "medical care" in its instruction on mitigation of damages. We find the argument to be without merit. The evidence in this case established that Mr. Atwood did not undergo certain forms of medical treatment that were suggested by his treating physician and/or consulting physicians retained by parties adverse to him. The possible medical treatment consisted of epidural nerve blocks and surgery as well as psychiatric evaluation and treatment, as suggested by Dr. Krettek, a consulting physician who examined Mr. Atwood on behalf of his employer. (N.T. 31.)

At trial, defendants put before the jury Dr. Krettek's opinion that Mr. Atwood's pain was psychological and not physical. Dr. Krettek concluded that Mr. Atwood suffered from "reactive depression" and that this depression was the source of his disability. Dr. Krettek also opined that the only future medical therapy recommended was that of an evaluation by a psychiatrist for pain control. He wrote that Mr. Atwood should seek medical/psychiatric evaluation and treatment.

With respect to mitigation, the court charged the jury that "both defendants in this action contend that had plaintiff Michael Atwood sought certain medical care the damage sustained by plaintiff would have been reduced or avoided." (N.T. 134.) The court then went on to explain, at length, the determinations the jury might have to make concerning whether this contention was warranted; whether such "medical care or treatment" would have a reasonable chance of improving Mr. Atwood's condition;

whether it was reasonable to seek such treatment; the risks associated with such treatment; and the probability that such treatment would succeed. (N.T. 134-35.)

Defendant Landvater contends that because the charge referred to "medical treatment" and not "psychiatric medical treatment" the jury could have reasonably interpreted the charge "only to require Michael Atwood to seek traditional physical medical treatment for his injuries." We do not agree. Based upon the evidence presented and considering the entirety of the charge, there is no basis to conclude that the jury did not understand the instruction, was confused thereby and/or otherwise misinterpreted the charge. There is no reasonable basis, nor does defendant Landvater disclose any, to conclude that the jury would not understand, based upon the evidence presented, that the words "medical care" encompassed psychiatric and/or physical medical care.

The court's charge was taken virtually verbatim from Pa.S.S.J.I. (Civ.) 6.35 (second alternative) which states in pertinent part: "The defendant in this action contends that had the plaintiff [sought medical care] [not delayed in seeking medical care] [followed the doctor's advice], the damage sustained by the plaintiff would have been reduced or avoided. . . ." This instruction in no way requires or directs the court to specify the form of medical care at issue in the case. Thus, the instruction as given was best suited to perform the function of allowing the jury to consider all forms of medical treatment. Defendants have failed to establish that the jury was confused or misled by this court's instructions and/or that that court's failure to use the word "psychiatric" resulted in prejudicial error. *Clack v. PennDOT,* 710 A.2d 148, 153 (Pa. Commw. 1998). Accordingly, we enter the following:

## ORDER

AND NOW, December 12, 2005, upon consideration of the post-trial motions filed by defendants Tina Landvater, Mervin Hoover and Power Systems Electric Inc., plaintiff's response thereto and for the reasons set forth in the accompanying opinion, it is hereby ordered that the defendants' post-trial motions, including their requests for a new trial, are denied.